**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **AARON KOLLIE SMITH,** | Case No. 1:19 CV 41 |
| Petitioner, | Judge John R. Adams |
| v. | Magistrate Judge James R. Knepp II |
| **HEATH SIMON, et al.,** | |
| Respondents. | **REPORT AND RECOMMENDATION** |

### INTRODUCTION

Petitioner Aaron Kollie Smith ("Petitioner"), an immigration detainee in federal custody, filed a Petition for a Writ of Habeas Corpus 28 U.S.C. § 2241 ("Petition"). (Doc. 1). Respondents filed an Answer (Doc. 7). Petitioner did not file a Reply, and the time in which to do so has passed. *See* Doc. 5 (initial scheduling order).

The district court has jurisdiction over the Petition under § 2241(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 4). For the reasons discussed below, the undersigned recommends the Petition (Doc. 1) be denied.

### BACKGROUND

Petitioner is a citizen of Liberia. (Declaration of Aaron Husband, Deportation Officer, Immigration and Customs Enforcement ("ICE"), Doc. 7-1, at 1) (hereinafter "Husband Decl."); *see also* Doc. 1, at 2.

Petitioner entered the United States in September 2004 as a lawful permanent resident. (Husband Decl., at 1); (Doc. 1, at 3).

First Detention

In January 2010, Petitioner was taken into ICE custody and placed in removal proceedings due to state criminal convictions of theft in 2005 (in Minnesota) and robbery in 2008 (in Ohio). (Husband Decl., at 1-2); *see also* Doc. 7-1, at 12-24 (state court records). In March 2010, an immigration judge found Petitioner's convictions did not render him removable. (Husband Decl., at 2). ICE released Petitioner, and appealed the immigration judge's determination. *Id.* In 2011, Petitioner was convicted of attempted breaking and entering and drug paraphernalia charges in Ohio. *Id.; see also* Doc. 7-1, at 25-28 (state court records).

In June 2011, the Board of Immigration Appeals ("BIA") granted ICE's appeal and found that Petitioner was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) (crime involving moral turpitude) and 8 U.S.C. § 1227(a)(2)(A)(iii) / § 1101(a)(43)(F) (aggravated felony crime of violence). (Husband Decl., at 2-3); Doc. 7-1, at 29-32. The BIA reinstated removal proceedings, and remanded the case to the immigration judge. (Doc. 7-1, at 32).

In November 2011, Petitioner was convicted of Ohio state charges of failure to comply with the order or signal of a police officer and receiving stolen property, and sentenced to two and a half years' imprisonment. (Doc. 7-1, at 33-34, 38-39).

In February 2013, the immigration judge issued a removal order, which became final after Petitioner failed to timely perfect an appeal. (Husband Decl., at 3); *see also* Doc. 7-1, at 41-42.

Following the completion of his state prison sentence, Petitioner was transferred into ICE custody. (Husband Decl., at 3); (Doc. 1, at 3).

In March 2014, the Government submitted a travel request to the Liberian Embassy. (Husband Decl., at 3). A Liberian Embassy official interviewed Petitioner in May 2014 regarding this travel document request, but never issued a formal decision thereon. *Id.* In October 2014,

Petitioner was released on an order of supervision "due to the delay in obtaining this travel document." *Id.*

Petitioner asserts that he was subsequently issued a work permit in March 2015. (Doc. 1, at 4).

In April 2015, Petitioner was convicted of Ohio misdemeanor charges of stopping after accident/hit skip and driving under suspension. (Doc. 7-1, at 47-48). Petitioner was sentenced to a suspended 180 days' imprisonment and placed on probation. *Id.*

In November 2015, Petitioner was convicted of an Ohio state charge of having weapons under disability and sentenced to nine months' imprisonment. (Doc. 7-1, at 43-44). He was also found to have violated his probation in a prior case and sentenced to 180 days in jail. *Id.* at 45-46.

In October 2016, Petitioner was convicted in an Ohio municipal court of resisting arrest, and sentenced to 180 days in jail, with 178 days suspended. (Doc. 7-1, at 49-50).

In February 2018, prior to Petitioner being taken into ICE custody, the Government made a new travel document request to the Liberian Embassy. (Husband Decl., at 4).

In July 2018, Petitioner was charged in an Ohio municipal court with for drug abuse and disorderly conduct/intoxication. (Doc. 7-1, at 51-52).

Petitioner was taken back into ICE custody on July 10, 2018, where he has remained since. (Husband Decl., at 4); (Doc. 1, at 4).

On August 22, 2018, ICE Headquarters Removal and International Operations Unit ("HQ RIO") reviewed Petitioner's custody status and issued a decision to continue detention signed by Heath Simon, HQ RIO Chief, explaining:

> ICE is currently working with the Government of Liberia to secure a travel document for your removal from the United States. A travel document from the Government of Liberia is expected, therefore you are to remain in ICE custody at this time.

(Doc. 1-1, at 53). A Liberian Embassy official interviewed Plaintiff on September 26, 2018, and Petitioner "was tentatively scheduled for removal to Liberia on a charter flight.". (Husband Decl., at 5). On November 28, 2018, "ICE was informed that Liberia would not issue a travel document in time for that flight." *Id.* Husband explains that this "was not a formal denial of that travel document request . . . and that request remains pending before the Embassy of Liberia." *Id.* Additionally, "[c]ontinued conversations between ICE and the Liberian embassy relating to the issuance of Petitioner's travel document are ongoing." *Id.*

On December 3, 2018, HQ RIO Chief Simon issued a second decision to continue detention, containing identical language to his August 2018 decision. (Doc. 7-1, at 55); (Doc. 1-1).

Petitioner also has an application for temporary status pending before United States Citizenship and Immigration Services ("USCIS"). (Husband Decl., at 5). Husband asserts that the Liberian Embassy informed ICE that it would not issue a travel document prior to the completion of USCIS's process. *Id.* ICE therefore requested expedited adjudication of that application and anticipated it will be complete by July 2019. *Id.*

On Marcy 27, 2019, HQ RIO Chief Simon issued a third decision to continue detention, containing identical language to his prior decisions. (Doc. 7-1, at 57).

Finally, Husband asserts that "there are generally no current impediments to removal of aliens to Liberia" and "[g]iven the impending completion of USCIS' application adjudication, I believe that it is significantly likely that Petitioner can and will be removed from the United States in the reasonably foreseeable future." (Husband Decl., at 6).

4

**DISCUSSION**

This case is before the Court on a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner seeks release from ICE custody, arguing that his continued detention violates the laws and Constitution of the United States. 28 U.S.C. § 2241(c)(3).

Under 8 U.S.C. § 1231(a)(1)(A), the Attorney General has ninety days to remove an alien from the United States after an order of removal becomes final. During this "removal period", detention of the individual is mandatory. § 1231(a)(2). Congress has further authorized the Attorney General (now the Secretary of the Department of Homeland Security) to detain such an alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Secretary] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

§ 1231(a)(6). "By its terms, this provision applies to three categories of aliens: (1) those ordered removed who are inadmissible under § 1182, (2) those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary determines to be either a risk to the community or a flight risk." *Clark v. Martinez*, 543 U.S. 371, 377 (2005).

However, "[i]n *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court interpreted this provision to authorize the Attorney General (now the Secretary) to detain aliens . . . only as long as 'reasonably necessary' to remove them from the country." *Clark*, 543 U.S. at 373 (quoting *Zadvydas*, 533 U.S. at 689, 699). The *Zadvydas* Court held that reading section 1231(a)(6) to authorize indefinite detention would render the statute unconstitutional. 533 U.S. at 690 ("The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of

5

. . . liberty . . . without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). Therefore, the *Zadvydas* Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682.

The Supreme Court held in *Zadvydas* that detention of an alien subject to removal due to a criminal conviction is presumptively reasonable for six months. 533 U.S. at 701.[1] However, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The *Zadvydas* court explained:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and

---

1. The Court carved out this six-month period of presumptive reasonableness because "[o]rdinary principles of judicial review in this area recognize primary Executive Branch responsibility . . . . [a]nd they consequently require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Zadvydas*, 533 U.S. at 700. Therefore, because the Court acknowledged "that recognizing this necessary Executive leeway will often call for difficult judgments" and "[i]n order to limit the occasions when courts will need to make them," it adopted the six-month presumptively reasonable period of detention. *Id.* at 700-01.

should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

*Id.* at 699-700.

Presumptively Reasonable Period

Based on *Zadvydas*, Petitioner's continued detention is no longer presumptively reasonable, as the detention has exceeded the six-month period. *See* 533 U.S. at 701. Petitioner has been in ICE custody since July 10, 2018, over twelve months.

Petitioner's Showing

Thus, according to the standard set forth in *Zadvydas*, the burden initially falls on Petitioner to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future". *Zadvydas*, 533 U.S. at 701. The undersigned finds Petitioner has not done so here. In fact, Petitioner does not provide any specific rationale or evidence for why he believes there to be no significant likelihood of his removal in the reasonably foreseeable future.

To satisfy this initial burden, Petitioner must show something more than the "mere passage of time." *Beckford v. Lynch*, 168 F.Supp.3d 533, 539 (W.D.N.Y. 2016). And, it requires something more than "speculation and conjecture". *Idowu v. Ridge*, 2003 WL 21805198, at *4 (N.D. Tex. 2003); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y.) (Petitioner must present more than "mere assertions that removal is unforeseeable"; unsupported allegations that the relevant embassy or consulate "will not issue a travel document in the foreseeable future" are insufficient). Additionally, "where the only impediment to removal is the issuance of the appropriate travel documentation, courts have uniformly held that 'mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe

that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Mohamed v. U.S. Att'y Gen.*, 2018 WL 1904293, at \*3 n.1 (S. D. Ohio) (quoting *Estenor v. Holder*, 2011 WL 5572596, at \*3 (W.D. Mich.) and collecting cases), *report and recommendation adopted*, 2018 WL 1901801.

> Petitioner has not made such a showing. Rather, in his Petition, Petitioner asserts:

> DHS's refusal to establish a bond, or release of some sort is unjustified and contrary to law. DHS cannot be permitted to detain Mr. Smith in perpetuity because the Government of Liberia is refusing to cooperate with their deportation efforts. If this were allowable, Mr. Smith could conceivably be detained for the rest of his natural life in the event that the Liberian Government never agrees to issue the necessary travel documents required for deportation.

(Doc. 1, at 4). He also asserts that he is being held "based on a political stalemate between the United States Government and the Government of Liberia". *Id.* Petitioner further asserts, without supporting evidence, that Deportation Officer Husband "submitted paperwork requesting that DHS release Mr. Smith on a bond or supervision due to Liberia's unwillingness to cooperate with the deportation efforts" but "Mr. Husband was rebuffed by his superiors and the request was denied." *Id.* But he presents no actual evidence that Liberia is not cooperating with the Government's deportation efforts nor other evidence to suggest that his removal is not significantly likely in the reasonably foreseeable future.

Moreover, the fact that Liberia has asserted that it will not issue a travel document until Petitioner's USCIS proceedings are complete cannot satisfy Petitioner's initial burden. *Cf. Alhousseini v. Whitaker*, 2019 WL 1439905, at \*4 (S.D. Ohio) (report and recommendation) ("[A] foreign government's refusal to issue travel documents due to ongoing litigation is also insufficient to carry the initial burden under *Zadvydas*.") (citing cases); *Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) (affirming denial of petition where the government was "prevented from removing Zheng" because of his various motions to stay his removal, some of which remained pending).

On the record now before the Court, the undersigned finds Petitioner has not met his burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future". *Zadvydas*, 533 U.S. at 701. Petitioner has submitting nothing in response to the Government's Answer suggesting its efforts toward removal detailed therein will not bear fruit in the foreseeable future. Petitioner has presented nothing more than the passage of time and his own speculation that Liberia will not issue the requested documentation. For the reasons detailed above, this is insufficient and he is therefore not entitled to habeas corpus relief.

This is not to say that Petitioner could not satisfy this burden at some point in the future, should his detention continue, because as *Zadvydas* counsels "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Should Petitioner's detention continue, and the factual circumstances change, he would be free to file a new habeas petition.

In the absence of any evidence in the record to suggest that the Embassy of Liberia will not issue the requested travel document in the reasonably foreseeable future, the undersigned concludes that Petitioner has failed to meet his initial burden of proof under *Zadvydas*.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition (Doc. 1) be DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).